UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------X
ALBERTO FERREIRAS,

               Petitioner,

               -against-

UNITED STATES OF AMERICA,

               Respondent.
----------------------------------------------------X

MEMORANDUM AND ORDER

CV 12-1305

(Wexler, J.)

FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E.D.N.Y
★ OCT - 1 2012 ★
LONG ISLAND OFFICE

APPEARANCES:

    ALBERTO FERREIRAS
    Petitioner, *pro se*
    Reg. No. 68242-053
    McRae Correctional Facility
    McRae, Georgia 31055

    LORETTA E. LYNCH, ESQ., UNITED STATES ATTORNEY
    BY: CHARLES P. KELLY, ESQ., ASSISTANT UNITED STATES ATTORNEY
    EASTERN DISTRICT OF NEW YORK
    Attorneys for Respondent
    610 Federal Plaza
    Central Islip, New York 11722

WEXLER, District Judge

On June 27, 2007, petitioner Alberto Ferreiras ("Ferreiras" or "petitioner") pled guilty before this court to all counts of a nine-count indictment alleging conspiracy and mail fraud. Prior to sentencing, the petitioner signed a Sentencing Stipulation with the United States Department of Justice in which he agreed that a sentence of 125 months would "be reasonable" and that he would not argue for a sentence under 100 months imprisonment. He also agreed to waive his rights to appeal or file a petition under 28 U.S.C § 2255 if he was sentenced to 125 months or below. On July 21, 2009, Ferreiras was sentenced to 125 months imprisonment.

Now, appearing *pro se*, Ferrieras moves this court pursuant to 28 U.S.C. § 2255 to vacate, set aside or correct his sentence, as well for leave to conduct discovery. For the reasons outlined below, petitioner's motions are denied.

## BACKGROUND

I.  Ferreira's Background and Prior Proceedings

This case arises out of two separate prosecutions of the petitioner Alberto Ferreiras which were resolved at one sentencing. Ferreiras was initially charged pursuant to two indictments dated July 24, 2002, as one of several defendants involved in a scheme to sell fraudulent investments. He was charged with securities violations, the intent to defraud the United States, and the use of manipulative and deceptive devices. In June 2003, Ferreiras pled guilty before this court to two counts of the superseding indictment.

Following his guilty plea, Ferreiras agreed to cooperate with the Government. Accordingly, in May 2004, Ferreiras met with U.S. Postal Inspector Sol Farash ("Farash"), as he had several times before, as well as U.S. Department of Justice attorney Richard Goldberg ("Goldberg"). As described by Ferreiras, his attorney did not attend, as had also happened several times before, after being advised Ferreiras was not a target of the investigation. In the course of that meeting, Ferreiras was questioned about various companies he owned, namely Cashlink, Ameripos and Tel2Net. After answering questions about his partners and the true owners of those businesses, and the roles he and his partners played in the day-to-day management of the businesses, he left the room to contact his attorney, Christopher Bruno, Esq. ("Bruno"). Bruno advised him "not to say another word," and then attended the remainder of the meeting by telephone. Since Bruno represented one of those partners in another matter, Bruno

alerted Ferreiras and the Government to his conflict of interest, and the meeting concluded quickly. According to Ferreiras, a few days later, he retained new counsel, David Chase, but Bruno continued to act as his "lead attorney" and "continued to provide petitioner with legal advice on every issue." Thereafter, Ferreiras continued to cooperate fully with the Government's Cashlink investigation over the course of several months, and ultimately Ferreiras settled a civil action with the Securities and Exchange Commission and forfeited all profits received therefrom.

Sometime in 2004, without stating more specifically when, Ferreiras alleges that U.S. Department of Justice attorney, Goldberg, offered him a 70-month prison term that would encompass the 2003 guilty pleas, as well as a new investigation that had been initiated regarding yet another business owned by petitioner called Pay-N-Go. Ferrerias says that through his attorney, he rejected that offer, and counter-offered that he plead guilty to a lesser offense that would avoid deportation to his native country of Spain, but still include a 70-month prison term. The Government rejected this counter-offer, and according to Ferreiras, Goldberg repeatedly threatened that if Ferreiras did not take the plea as originally offered by the Government, he would be indicted on the Cashlink investigation.

Ferreiras says that Bruno advised him repeatedly, and he now argues ineffectively, that the Government was "bluffing," and that the Government would not indict him on Cashlink because there was prosecutorial misconduct at the May 2004 meeting. Ferreiras also states he was told by Bruno that since the 70-month plea with possible deportation was the "worst case scenario," there was no point in taking it. Ferrerias claims that Bruno advised Ferreiras reject the offer.

In response, the Government claims that there never was a 70-month plea offer made to

3

Ferrieras. Yet it agrees with Ferreiras' account that Ferreiras offered to plead guilty to the sale of an unregistered security with a 70-months imprisonment, which the Government rejected. In October 2006, the Government claims it did offer that Ferreiras plead to conspiracy to commit mail fraud with a recommended term of 87 months, which was rejected by Ferreiras. For the purposes of this motion, the court relies upon Ferreiras' version of the facts.

In January 2007, Ferreiras was indicted again, in the Southern District of Florida on charges of mail fraud and conspiracy to commit mail fraud for his involvement with Cashlink. This indictment was deemed related to the earlier charges before this court, and with the consent of the parties, the case was transferred to this court for plea and sentence pursuant to the Federal Rules of Criminal Procedure, Rule 20.

Soon after the transfer, in light of Bruno's previous representation of some of the now co-defendants, this court appointed *Curcio* counsel, Raymond Colon, Esq. ("Colon"), to review any potential conflict with the Ferreiras. A *Curcio* hearing was held, and in June 2007, while represented by Messrs. Bruno and Colon, Ferreiras waived any potential conflict, and pled guilty to all nine counts of the Cashlink indictment.

At some point, Ferreiras doesn't specify when, Ferrieras hired Joseph Conway, Esq. ("Conway") on the recommendation of Bruno, to represent him. This was purportedly with the hope that Conway's familiarity with this court, as the former Chief of the Long Island Division of the U.S. Attorney's Office, would enable Ferreiras to procure an offer similar to 70-month deal he claims had previously been offered. Ferreiras states in his papers that Conway represented him in connection the Sentencing Stipulation and at sentencing.

In July 2009, Ferreiras' Sentencing Stipulation was filed with the court, in which he

agreed that "a sentence of 125 months' imprisonment would be reasonable under all applicable circumstances," and that he would not argue for a "sentence under 100 months' imprisonment." Ferreiras further agreed that he would "not file an appeal or challenge, by petition pursuant to Title 28, United States Code § 2255 or any other provision, the conviction or sentence in the event that the Court imposes a term of imprisonment in 07-CR0325 of 125 months or below."

On July 21, 2009, Ferreiras was sentenced by this court, appearing with Bruno and Conway. Upon questioning from the court, Ferrerias acknowledged that he had a chance to discuss the waivers with his attorneys, understood them and agreed to them. Ferreiras was sentenced to 125 months -- six months for counts 1 and 2 of the earlier indictments of 2002, and 125 months on counts 1-9 of the indictment transferred from Florida -- to run concurrently.

II.   The Present Application

Petitioner brings this motion to vacate his sentence under 28 U.S.C. § 2255, claiming that his sentence of 125 months should be vacated or corrected for three reasons: (1) the Government violated his Fifth Amendment right against self-incrimination and Sixth Amendment right to effective assistance of counsel in connection with the meeting with investigators in May 2004; (2) his Sixth Amendment right to counsel was violated as a result of the ineffective assistance of Bruno is connection with plea negotiations prior to the Cashlink indictment; and (3) the counsel he received from Joseph Conway in connection with the sentence in this case was ineffective and also violated his Sixth Amendment rights because Ferreiras alleges that Conway had a greater loyalty to Bruno than to him. Ferreiras also moves for leave to conduct discovery and requests that the court conduct a hearing in connection with his petition.

# DISCUSSION

I. Legal Principles

1. Hearing

The Court first addresses Ferreiras' request that the court conduct a hearing on this matter. In connection with this petition, the parties submitted seven (7) affidavits, including one from Ferreiras, two from his wife, Kimberly Ferreiras, one each from Bruno, Conway, Farash and Goldberg, correspondence between Bruno and Conway, Goldberg, and Eric Bustillo, a AUSA in the Southern District of Florida; and copies of purported text messages between Bruno and Ferreiras' wife. Ferreiras requests more discovery be permitted and that the court hold an evidentiary hearing.

The Second Circuit has repeatedly affirmed the discretion of the district court to decline to hold a full testimonial hearing, opting instead for a "middle road," particularly when it is decided that live testimony would "add little or nothing to the written submissions," which include detailed submissions from counsel. Wang v. United States, 2012 WL 284972, **2 (2d Cir. 2012), quoting Chang v. United States, 250 F.3d 79, 86 (2d Cir. 2001), and distinguishing Raysor v. United States, 647 F.3d 491 (2d Cir. 2011) (remanded for a hearing where counsel countered with a "plainly inadequate affidavit"), Wang, at **1, fn 1; see also Williams v. United States, 2011 WL 3296101, *6 (S.D.N.Y. 2011). The court finds that in light of the extensive and detailed submissions in connection with this petition, there is no need for a testimonial hearing.

2. Waiver

In opposition to the petition, the Government argues that Ferreiras' petition should be denied since he waived his right to file any motion under 28 U.S.C. § 2255 in his Sentencing

Stipulation. The Government further argues that Ferreiras got a benefit for waiving those rights -- an agreement for a sentencing recommendation of 125 months instead of the 210-262 month sentence he faced under the guidelines -- and he should not be allowed to try to keep the benefit while not being held to the cost. Furthermore, the Government argues that the affidavits of Bruno and Conway state that Ferreiras understood the nature of the waivers when he agreed to them, and therefore cannot now argue that they do not apply.

While appeal waivers in a guilty plea[1] are generally enforced, a question is raised when the petitioner argues that the process by which the waiver was obtained in unconstitutional. The Second Circuit has stated that it "would not enforce such a waiver of appellate rights [when] the defendant is challenging the constitutionality of the process by which he waived those rights. We have suggested that a plea agreement containing a waiver of the right to appeal was not enforceable where the defendant claims that the pleas agreement was entered without effective assistance of counsel." United States v. Hernandez, 242 F.3d 110, 113-114 (2d Cir. 2001)(citations omitted).

The Second Circuit has further explained that "[t]he appeal waiver would be unenforceable if the record of the criminal proceeding revealed that the claim that the waiver was the result of ineffective assistance of counsel was meritorious. But if the record on appeal shows that the claim lacks merit, the appeal should be dismissed because the waiver should be enforced." United States v. Monzon, 359 F.3d 110, 118-119 (2d Cir. 2004). The court added that a motion 28 U.S.C. § 2255 would be an appropriate context in which to determine claims of

---

1The court notes that the waiver in this case is contained in the Sentencing Stipulation as opposed to the guilty plea, but finds that the same reasoning applies.

ineffective assistance of counsel, id., at 119, then proceeded to review whether petitioner's claim had merit. Monzon, 359 F.3d at 119. Thus, before deciding on the validity of the waiver, the court must first determine whether the petitioner's claims have merit.

II.   Disposition of the Petition

   A.   The May 2004 Meeting

Petitioner argues that the Government violated his Sixth Amendment right to counsel and his Fifth Amendment right against self-incrimination in connection with the meeting he attended in May 2004 with U.S. Postal Investigator Farash and U.S. Department of Justice attorney Goldberg. Ferreiras argues that his attorney was told that Ferreiras was not the target of the investigation, causing Ferrerias to attend the meeting without his counsel and purportedly give the Government information that he alleges was subsequently used against him. He claims that this also made Bruno ineffective in the subsequent plea negotiations, and ultimately led to the Cashlink indictment, and a harsher sentence of 125 months instead of 70 months.

It is well-settled that a right to counsel only attaches once the prosecution has been initiated, or "'at the first appearance by the accused, before a judicial officer at which a defendant is told of the formal accusation against him and restrictions are imposed on his liberty.'" United States v. Moore, 670 F.3d 222 (2d Cir. 2012), quoting Rothgery v. Gillespie County, 554 U.S. 191, 194 (2008) (citations omitted); see also United States v. Stein, 541 F.3d 130, 152 (2d Cir. 2008) (Sixth Amendment right to counsel attaches once a prosecution is commenced). "'It is only at that point that ... 'the adverse positions of government and defendant have solidified' and the accused 'finds himself faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law.'" Moore, 670 F.2d at 234, quoting

Rothgery, 554 U.S. at 198.

It is clear that the May 2004 meeting was not an initiation of the prosecution against Ferreiras that created a right to counsel. The meeting was in connection with his ongoing cooperation with the Government, his attorney had been notified of the meeting, Ferreiras attended voluntarily without counsel initially, and indeed, according to Ferreiras, his attorney attended by phone once Ferreiras called him. As a result, his Sixth Amendment right to counsel had not yet attached and therefore was not violated.

Ferreiras also claims his Fifth Amendment right against self-incrimination was violated, arguing that information gained in May 2004 meeting was used against him. Fifth Amendment protections apply to a person held in custody. Caiozzo v. Koreman, 581 F.3d 63, 69 (2d Cir. 2009) (the Fifth Amendment protects a pretrial detainee held in custody); United States v. Plugh, 576 F.3d 135, 140 (2d Cir. 2009)(Fifth Amendment claims are meritless since defendant was not in custody), citing Jenkins v. Anderson, 447 U.S. 231 (1980). Even under the facts as alleged by Ferreiras -- that he attended the meeting voluntarily as part of his ongoing cooperation with the Government, that he left the meeting room to go call his attorney, and that the meeting was concluded once his attorney revealed his conflict with the other people involved in the investigation -- do not portray that Ferreiras was "in custody" to trigger his Fifth Amendment right against self-incrimination. Nor does Ferreiras specify what, if any, information was obtained at the meeting and used against him in connection with the 2007 indictment.

B.  The Bruno Representation

Ferreiras claims that he suffered from the ineffective assistance of counsel when Bruno poorly advised him regarding the alleged 70-month plea offer before he was indicted on

9

Cashlink, and complains that Bruno was ineffective because he never filed a prosecutorial misconduct claim. Ferrerias states that Goldberg threatened that he would face indictment on Cashlink if he did not accept the 70-month offer on the Government's terms. Goldberg contacted Bruno "[o]n multiple occasions" to give Ferreiras "one last chance" to accept the offer of 70-months, yet Bruno repeatedly advised that the Government was "bluffing." According to Ferreiras, Bruno advised that the Government could not indict him because there was prosecutorial misconduct at the May 2004 meeting. Ferreiras alleges that but for this bad advice, he would have taken the 70-month offer and avoided the Cashlink indictment and the resulting 125 month sentence, and that this amounts to a violation of his Sixth Amendment rights.

It is well-settled that to prevail of a claim of the ineffective assistance of counsel, the petitioner must show that (1) the counsel's performance fell below an objective standard of reasonableness; and (2) there was reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Zandi v. United States, 460 Fed. Appx. 51, 52 (2d Cir. 2012), quoting Strickland v. Washington, 466 U.S. 668, 687-688 (1984). See also Raysor v. United States, 647 F.3d 491, 495 (2d Cir. 2011) (quotations omitted). In explaining what constitutes deficient performance by counsel, the U.S. Supreme Court has advised that "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Strickland, at 689. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." Strickland, 466 U.S. at 690.

Assuming the facts as alleged by Ferreiras to be true, he is unable to show that Bruno's representation constituted ineffective assistance of counsel. The thrust of Ferreiras' argument is that Bruno advised him to reject the alleged 70-month plea deal since the Government would not be able to indict him for Cashlink. While hindsight has proven that Bruno was wrong, and Ferreiras was indicted for Cashlink, Ferrieras does not provide any evidence that this strategy decision was outside reasonable professional norms, or results from "such as a deficient investigation, a legal error, or a complete failure to render advice." See Lake v. United States, 2012 WL 695433, **2 (2d Cir. 2012) (citations omitted). Viewing the facts as alleged by Ferreiras, Bruno's advice to reject the 70-month offer, despite the threat of the Cashlink indictment, is one of strategy that is "virtually unchallengeable." See Strickland, at 690. Similarly, Bruno's decision to not pursue a claim for prosecutorial misconduct, is a strategy decision which, without evidence of a failure to investigate or legal error, is unchallengeable.

In a case involving similar facts, the Second Circuit recently affirmed the district court's denial of a motion under 28 U.S.C. § 2255 where the defendant claimed that he rejected an earlier offer of 10-years based on counsel's advice that he could prevail at trial or get a better deal, and assured him he would not be penalized for previous conduct for which he was acquitted. After rejecting the deal, a prior felony information was filed against the defendant, his earlier acquitted conduct was considered, and he was sentenced to 20 years. The Second Circuit found that counsel's "miscalculation as to Government's willingness to negotiate a more favorable deal or restore its initial plea offer, represent, at best, strategic errors that are 'virtually unchallengeable.'" Lake v. United States, 2012 WL 695433, **2 (2d Cir. 2012), quoting Strickland, at 690. Likewise in this case -- that it ultimately turned out that Ferreiras and Bruno

11

were wrong about whether the Government was "bluffing" -- does not equate to a finding that Bruno performed below an objective standard of reasonableness.

Ferreiras also fails to satisfy the second prong, prejudice, of the <u>Strickland</u> test. Ferreiras states that if he had known the Bruno was wrong and that he would face more time as a result of the Cashlink indictment, he certainly would have taken the earlier deal. As objective evidence of that, Ferreiras points to the difference between the 70-month deal he rejected and the 125-month sentence he received, arguing this objective evidence is sufficient to show prejudice. See <u>Pham v. United States</u>, 317 F.3d 178, 182 (2d Cir. 2003) ("significant sentencing disparity in combination with defendant's statement of his intention is sufficient to support a prejudice finding."). Yet, the U.S. Supreme Court has recently stated that "[i]n order to complete a showing of <u>Strickland</u> prejudice, defendants who have shown a reasonable probability they would have accepted the earlier plea off must also show that, if the prosecution had the discretion to cancel it or if the trial court had the discretion to refuse to accept it, there is a reasonable probability neither the prosecution nor the trial court would have prevented the offer from being accepted or implemented. This further showing is of particular importance because a defendant has no right to be offered a plea." <u>Missouri v. Frye</u>, 132 S.Ct. 1399, 1410 (2012).

In this case, Ferreiras is unable to show that even if Bruno was ineffective, the Government's purported 70-month deal would still have continued to be available. Indeed, the Government states that it never even offered the deal as described by Ferrieras, much less that it would have continued to be available to him after he rejected it. Therefore, having also failed to satisfy the prejudice prong, his claim that Bruno provided ineffective assistance of counsel fails.

C. The Conway Representation

Ferreiras asserts that his Sixth Amendment rights were also violated as a result of a conflicted representation from Conway, who represented him in connection with the Stipulation. Ferrieiras claims that Conway rejected Ferreiras' persistent requests that Conway argue to the court that he be sentenced to 70 months, as he alleges was previously offered, or that prosecutorial misconduct occurred at the May 2004 meeting. According to Ferreiras and without alleging anything more specific, Conway's failure to raise these issues resulted from a conflict of interest between Conway's "loyalty to counsel Bruno who was responsible for referring counsel Conway to petitioner" and Ferreiras, since such arguments would "expose Bruno's ineffectiveness."

To show that he has suffered ineffective assistance of counsel because of a conflict of interest in violation of the Sixth Amendment, Ferreiras must show that "his attorney has (1) a potential conflict of interest that resulted in prejudice to the defendant, or (2) an actual conflict of interest that adversely affected the attorney's performance." United States v. Levy, 25 F.3d. 146, 152 (2d Cir. 1994) (citations omitted). Here, Ferreiras provides no evidence to support his claim that Conway was conflicted and failed to act in the best interests of his client. Merely asserting a conflict, without more, is insufficient. See Garcia-Giraldo v. United States, 691 F. Supp.2d 500, 514 (S.D.N.Y. 2010) (claim that attorney was conflicted because he wanted representation from other clients is insufficient).

The court finds that there is no merit to Ferreiras' claims that his Sixth Amendment right to counsel and his Fifth Amendment right against self-incrimination have been violated. Therefore, the waiver contained in the Sentencing Stipulation is valid, and plaintiff's motion to

13

28 U.S.C. § 2255 is denied.

III. Disposition of Ferrierias' Motion for Leave of Court to Conduct Discovery

Ferreiras seeks leave of the court pursuant to Rule 6 of the habeas corpus rules to conduct discovery on this matter. A habeas petitioner is not entitled to ordinary discovery of a civil litigant, but Rule 6 states that "[a] judge may, for good cause, authorize a party to conduct discovery. Bracy v. Gramley, 520 U.S. 899, 904 (1997). In this case, Ferreiras seeks the entire file of his attorney, as well the files of Goldberg, Farash and AUSA Eric Bustillo to prove the facts that the alleged by him in his petition are true, and to "discredit" the affidavits of Bruno, Conway, Goldberg and Farash submitted by the Government in opposition to his motion. Since the court assumes for the purpose of this motion that the facts as alleged by Ferreiras to be true, and finds them to be without merit as discussed above, there is no need for further discovery. Thus, the petitioner's motion under Rule 6 for leave for conduct discovery is denied.

## CONCLUSION

For the foregoing reasons, the petitioner's motion under 28 U.S.C. § 2255 to vacate or correct his sentence is denied, and the petitioner's motion for leave to conduct discovery is also denied. The Clerk of the Court is directed to close the file in this case.

SO ORDERED.

LEONARD D. WEXLER
UNITED STATES DISTRICT JUDGE

Central Islip, New York
October 1, 2012